**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

ROBERT HALL
ADC #90971                                                                          PLAINTIFF

V.                                        NO: 2:07CV00027 SWW/HDY

LARRY NORRIS *et al.*                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan W. Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.
2.    Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted) was not  offered at  the hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff, an inmate at the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC"), filed a *pro se* complaint (docket entry #2), pursuant to 42 U.S.C. § 1983, on February 15, 2007, alleging a number of constitutional violations.  On April 19, 2007, Defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment (docket entry #33), along with a brief in support (docket entry #34).  On May 9, 2007, Defendants filed another motion to dismiss, or in the alternative, a motion for summary judgment, which reiterated the arguments advanced in the earlier motion, and also raised the arguments on behalf of newly served Defendants Jacque Reams and Tony Taylor (docket entry #48).[1]  Plaintiff filed a response on July 17, 2007 (docket entry #64).  On August 7, 2007, Defendants filed a supplemental motion to dismiss, or in the alternative a motion for summary judgment, attaching a copy of the Claims

---

[1]The motions have been filed on behalf of all remaining Defendants except for Robert Jackson, upon whom service has yet to be perfected.

2

Commission file (docket entry #67).  Plaintiff has not responded to that final motion.  Because Defendants have attached exhibits to their motions and brief, the Court will treat the motions as motions for summary judgment.

## I.  Standard of Review

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case.  *Celotex*, 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

## II.  Analysis

Plaintiff named 21 Defendants in his complaint, along with four John Does.  The named Defendants are ADC Director Larry Norris, ADC Chief Deputy Director Ray Hobbs, ADC Deputy Director Wendy Kelly, EARU Warden Greg Harmon, EARU Assistant Warden Randy Watson, EARU Building Major Maurice Williams, EARU Field Major Jeremy Andrews, EARU Captain Dennis Jackson, EARU Sgt. V. Westbrook, EARU Program Coordinator Harlin Puckett, Sr., EARU Correctional Officer Reginald Gray, EARU Classification Officer Betty Lieblong, EARU Mail

Room Supervisor Robin McAlister, ADC Attorney Jan Dewoody Scussel, EARU Mental Helath Counselor Patrick Walton, former EARU Assistant Warden Robert Jackson, Former EARU Sgt. Toney Taylor, former ADC Law Library Supervisor Jaque Reames, former EARU Infirmary Manager Mark Moorehead, Correctional Medical Services, Inc. ("CMS"), and EARU Officer Ted Austin.

Plaintiff advances six claims, four of which are related.  Thus, there are essentially four distinct claims: that he was assigned to the "hole," and later to administrative segregation, without due process; that he was given less desirable job assignments in retaliation for his grievances, and for not "snitching;" that his hobby craft materials were stolen, and certain Defendants conspired to cover up the theft; and that certain Defendants have impeded his court access.

On April 11, 2007, Judge Wright entered an order dismissing Plaintiff's claims against Does, Gray, Kelly, Moorehead, Scussel, Walton, Westbrook, Austin, and CMS (docket entry #28). However, Judge Wright gave Plaintiff additional time to file objections (docket entries #40 & #56), which would be considered as a motion for reconsideration of her dismissal order.  Plaintiff filed his objections on June 18, 2007 (docket entry #59), and, on August 1, 2007, Judge Wright entered an order denying Plaintiff's motion for reconsideration (docket entry #65).

In their motions, Defendants contend that Plaintiff has failed to set forth any cognizable constitutional claims, that he had adequate post-deprivation remedies under state law with respect to the loss of his property, that he failed to exhaust his administrative remedies with respect to his claim that he was denied access to the courts, that his claims are barred by the doctrines of sovereign and qualified immunity, that his claims are not actionable in that they seek relief under a theory of *respondeat superior*, that he makes no specific allegations against Defendants John Doe, Wendy Kelly, Mark Moorehead, or CMS, and that Plaintiff's claims against Robert Jackson should be

dismissed for want of proper service.  The Court will address each of Plaintiff's claims individually.

A.  *Denial of due process*

According to Plaintiff's complaint, on June 22, 2005, his hobby craft work area was searched, and he was taken to isolation, or the "hole," while officials undertook an investigation into contraband that had allegedly been sent to the law library.  Plaintiff contends that he knew nothing of the contraband, but nonetheless remained in the hole for 42 days without a hearing.  Thereafter, Plaintiff was placed into administrative segregation, where he remained until February 24, 2006.

Plaintiff argues that he was assigned to the hole and to administrative segregation without due process.  Prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.  *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  If a restraint on a prisoner's liberty "does not present a dramatic departure from the basic conditions" of an inmate's sentence, the restraint will not implicate a protected liberty interest. *Id.*  In short, "[a]n inmate who makes a due process challenge to his segregated confinement 'must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship." ' " *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir.2002)(*quoting Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir.2000)).

Exhibit A, attached to Defendants' brief at docket entry #34, demonstrates that Plaintiff was on investigative status from June 22, 2005, until July 14, 2005, and transferred to the East Arkansas Regional Maximum Security Unit ("EARMSU").  During this time, Defendants were investigating the contraband scheme involving a member of the prison's staff, and Plaintiff was implicated in the scheme.  Plaintiff's transfer was made pursuant to the administrative segregation policy, attached as Exhibit B to docket entry #34.  On August 2, 2005, Plaintiff had an administrative review, and

was moved out of isolation back into the administrative segregation barracks, where he stayed until he was transferred back to the EARU on February 24, 2006.  Plaintiff was given notice of classification hearings in July and August, as well as the results.  *See* docket entry #34, Exhibit J.[2]

The Eighth Circuit has suggested that such evidence, standing alone, is insufficient to establish an "atypical and significant hardship."  *See Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997) (citing cases); *Hemphill v. Delo*, 124 F.3d 208, *2(8th Cir.1997) (unpub. per curiam) ("Here, Hemphill has not alleged more than that he spent four days locked in his housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation. We conclude that, without alleging more, this period of time in segregation does not constitute an 'atypical and significant hardship' when compared to the burdens of ordinary prison life."); *Driscoll v. Youngman*, 127 F.3d 207, *2 (8th Cir. 1997) (unpub. per curiam) ("[A] total of 135 days in disciplinary and administrative segregation did not alone constitute an 'atypical and significant hardship' when compared to the 'ordinary incidents of prison life.' " (citations omitted)).  Under the circumstances of this case, being placed in isolation pending a disciplinary investigation and subsequently being assigned to administrative segregation did not represent an "atypical and significant hardship" implicating Plaintiff's due process rights.

In his response to the motions, Plaintiff further alleges that prison policy was violated and that the hole time was forced upon him without penological justification.  However, the fact that prison policy may not have been followed in connection with his being sent to the hole is insufficient to state a constitutional claim.  *See Gardner v. Howard*, 109 F. 3d 427, 430 (8th Cir. 1997)(no § 1983 liability for violation of prison policy).  Plaintiff also contends that the time he spent in

---

[2]Exhibit J also indicates that a staff member was terminated as a result of the contraband investigation.

administrative segregation was spent at the EARMSU. According to Plaintiff, due process was required, before he was placed in the maximum security unit, pursuant to the United States Supreme Court's ruling in *Wilkinson v. Austin*, 545 U.S. 209 (2005). *Wilkinson*, however, is inapposite. In *Wilkinson*, the Court found an atypical and significant hardship at a supermax prison where, in addition to conditions similar to most in solitary confinement, placement was indefinite, reviewed only annually after initial 30-day review, and disqualified otherwise eligible inmates for parole consideration. According to Plaintiff's complaint, he was held in the super max unit only for about seven months. Moreover, even if due process attached to Plaintiff's time in administrative segregation, Plaintiff admits in his response that he received notice of a hearing, and a hearing, before he was placed into the maximum security unit. Plaintiff's dissatisfaction with the hearing itself and the result does not mean that he was denied due process.[3]

## B. Retaliation in job assignments

When Plaintiff was released from administrative segregation on February 24, 2006, he was assigned to be a building utility worker. However, he alleges that, at the direction of Williams and Andrews, Lieblong reassigned him to the hoe squad, for which he was physically unfit, despite the fact that Plaintiff was never given a classification hearing. Plaintiff asserts this assignment was in retaliation for his filing of grievances, and for not "snitching." According to docket entry #34, exhibit D and exhibit K, Plaintiff had a medical classification of M-2, which made him eligible for work on the field utility squad. However, Plaintiff complained, and was given a new medical evaluation. On March 9, 2006, the classification committee was made aware of his new restrictions,

---

[3]Defendant Robert Jackson, who has not yet been served, was named for his involvement with the alleged denial of due process. Because the undersigned has determined that there was no due process violation, there is no need to attempt service on Robert Jackson again, even though Plaintiff has provided an address for him.

and moved him to be a building utility worker, which was consistent with his restrictions.  *See* docket entry #34, exhibit D.  Thus, it is apparent that Plaintiff was assigned to a job consistent with his medical restrictions at the time, and, when those restrictions changed, he was reassigned to an appropriate position.  There is no evidence that any Defendant had a role in medically classifying Plaintiff, and he was moved when his restrictions changed.  Additionally, Plaintiff has not alleged any specific injury as a result of his time as a field utility worker.  Thus, it is clear that Plaintiff has no claim for retaliation.

C.      *Theft of hobby craft materials*

Plaintiff asserts that, when he was initially placed into the hole, several thousand dollars worth of hobby craft materials were lost or stolen.  However, Judge Wright has already adopted the undersigned's recommendation to dismiss Plaintiff's claims concerning his loss of personal property, and his conspiracy claims (docket entries #28 & #65).   Therefore, no further discussion on those claims is necessary.

D.  *Impeding access to the Courts*

Finally, Plaintiff asserts that his access to the Courts has been impeded.  Plaintiff cites four instances of challenged actions: the failure of McAlister to forward his legal mail, when she forwarded his personal mail, while he was at the Diagnostic Unit between July and October of 2006; the failure of law library staff to provide him with a copy of an administrative directive regarding investigations; the ADC's policy of only granting inmates 30 minutes of law library access per week; and the failure of law library clerks to provide adequate research or typing services.  Plaintiff must demonstrate an injury to maintain a viable denial of access to the Courts claim. *Lewis v. Casey*, 518 U.S. 343, 350-353 (1996).  According to Plaintiff's complaint, he has had cases dismissed because of the actions of Defendants.  Defendants allege that Plaintiff has failed to put them on notice as to

what injury he is alleging due to the interference.  In his response to the motions for summary judgment (docket entry #63), Plaintiff suggests that his Claims Commission action was dismissed because of McAlister's action of misdirecting "a large although unknown quantity of legal mail coming into the unit to Plaintiff."  Plaintiff also asserts that Puckett denied him extra law library time, refused to make legal copies, lied about the theft of hobby craft property, and threatened the law library clerk to prevent him from helping Plaintiff with his claim.

According to documents in the Claims Commission file Defendants have attached to their supplemental motion (docket entry #67, attachment #3), Plaintiff's original claim was dismissed by the Claims Commission on September 15, 2006, for the reasons set forth in the Respondent's motion to dismiss, and for Plaintiff's failure to respond.  However, Plaintiff's motion for reconsideration was granted by the Claims Commission on October 13, 2006, and he was given 25 days to respond to the Respondent's motion to dismiss.  Attachment #4 to docket entry #67 contains an undated response Plaintiff filed to the Defendants' motion to dismiss before the Claims Commission. According to the notarization, the document was signed on October 17, 2006.  On November 17, 2006, the Claims Commission again granted the Respondent's motion to dismiss, this time solely for the reasons contained in the Defendants' motion, and not for Plaintiff's failure to respond. Plaintiff alleges in his complaint that his mail was returned and not forwarded between July 31, 2006, and October 3, 2006, the time he was at the Diagnostic Unit.  Thus, even if his mail had been held while he was at the Diagnostic Unit, the Claims Commission granted him additional time to respond on October 13, 2006, after he was transferred from the Diagnostic Unit.  Indeed, Plaintiff did respond to the motion to dismiss before the Claims Commission.  Therefore, Plaintiff suffered no injury even if his mail was held while he was at the Diagnostic Unit.

With respect to Plaintiff's other assertions of denial of access, the Court concludes that the

ADC's law library policy is adequate, that Plaintiff was not injured by not receiving a copy of an administrative directive, that Plaintiff is not entitled to assistance from prison library law clerks, and that any deficiencies they have in research or typing skills is not actionable.[4]  Thus, Plaintiff cannot maintain a viable denial of access to the courts claim.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' motions for summary judgment (docket entries #33 #48, & #67) be GRANTED, and Plaintiff's complaint be DISMISSED WITH PREJUDICE.

DATED this ___28___ day of August, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]Defendants also assert that Plaintiff did not exhaust his administrative remedies regarding his allegations of denial of access to the courts.  In support of their claim, Defendants offer, as exhibit "G" to their brief, a copy of a grievance Plaintiff filed on November 3, 2006, which addressed McAlister's handling of his mail, and a medical issue.  That grievance was returned without consideration because it was untimely and addressed more than one issue.  While that grievance may not have been properly exhausted, the record is insufficient at this time for the Court to conclude that there are no other properly exhausted grievances concerning the same issues.